Patrick G. Conroy, OSB #223806
Email: patrick@elpnw.com
Jameson E. Gideon, OSB #202871
Email: jameson@elpnw.com
Randy J. Harvey, OSB #116714
Email: randy@elpnw.com

**EMPLOYMENT LAW PROFESSIONALS
NORTHWEST LLC**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-1404


Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SHANNON STOUT<br>      Plaintiff,<br>  v.<br><br>OREGON DEPARTMENT OF CORRECTIONS; TAGALOA MANU, an individual, TYLER STEPPER, an individual, CHRIS RANDALL, an individual, TERESA PLUMMER, an individual,<br><br>      Defendants. | Case No. 3:23-cv-1225<br><br>**COMPLAINT**<br>Violations of ORS 659A.199, 659A.203, 659A.112, and ORS 659A.040; Violations of 29 U.S.C. § 2615; Violations of the First Amendment (42 U.S.C. § 1983); and Wrongful Discharge;<br><br><br>**DEMAND FOR JURY TRIAL** |

///

///

///

PAGE 1 – COMPLAINT

Plaintiff Shannon "Bud" Stout ("Plaintiff") brings this action Defendant Oregon Department of Corrections ("DOC"), Tagaloa Manu ("Manu"), Tyler Stepper ("Stepper"), Chris Randall ("Randall"), Teresa Plummer ("Plummer") for violations of ORS 659A.199, 659A.203, 659A.112, and ORS 659A.040; violations of 29 U.S.C. § 2615; violations of the First Amendment (42 U.S.C. § 1983); and Wrongful Discharge, and demands a jury trial as follows:

## INTRODUCTION

### 1.

This is a civil rights and employment case involving Plaintiff's employment and eventual termination from Deer Ridge Correctional Institute ("DRCI"), where he was employed as a correctional officer. DRCI is operated by DOC. Defendants violated Plaintiff's civil rights, retaliated against Plaintiff for good faith reports of actions he believed violated federal, state, and/or local laws, including DRCI policies and regulations, and discriminated against Plaintiff based on his use of worker's compensation and subsequent overtime restriction.

### 2.

In this suit, Plaintiff seeks compensation for the numerous losses caused by the misconduct of DOC and therefore against the various individual Defendants for their part in this misconduct.

## JURISDICTION AND VENUE

### 3.

This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, as Plaintiff's claim  under 29 U.S.C. § 2615 and the First Amendment.

### 4.

The Court has supplemental jurisdiction over the state law and common law claims in this action under 28 U.S.C. § 1367.

///

///

PAGE 2 – COMPLAINT

5.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial District. Venue is proper in this division pursuant to Local Rule 3-2.

**PARTIES**

6.

Plaintiff was at all material times a resident of Redmond, Oregon.

7.

DOC is an agency of the state of Oregon which employs correctional officers to manage state prisons, including DRCI in Madras, Oregon.

8.

Defendant Manu is an employee of DRCI, was Plaintiff's direct supervisor, and a Captain at DRCI. At material times herein, Manu acted within the scope and outside of the scope of his employment.

9.

Defendant Stepper is an employee of DRCI, a supervisor of Plaintiff, and a human resources manager at DRCI. At material times herein, Stepper acted within the scope and outside of the scope of his employment.

10.

Defendant Randall is an employee of DRCI, a supervisor of Plaintiff and the superintendent of DRCI. At material times herein, Randall acted within the scope and outside of the scope of his employment.

11.

Defendant Plummer is an employee of DRCI, a supervisor of Plaintiff and the assistant superintendent of security of DRCI. At material times herein, Randall acted within the scope and outside of the scope of her employment.

PAGE 3 – COMPLAINT

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

## FACTUAL ALLEGATIONS

### 12.

Plaintiff incorporates the preceding paragraphs of this complaint by reference. All allegations made herein are made upon information and belief, based on investigation of counsel and personal knowledge. All dates are on or about the date specified.

### 13.

Plaintiff has met governmental notice requirements under ORS 30.750 by submitting tort claims notices and by filing this action.

### 14.

Plaintiff began working for Defendant DRCI in 2008, approximately 15 years ago, as a correctional officer.

### 15.

Plaintiff's job duties were directing and controlling adults in custody ("AICs"), organizing work crews, documenting AICs' behavioral issues, and other duties.

### 16.

Plaintiff is a union member represented by AFSCME.

### 17.

Until 2020, Plaintiff had no disciplinary record during his time at DRCI.

### 18.

In 2020, Plaintiff injured his knee while working at DRCI, resulting in worker's compensation claim and a continuing work restriction preventing Plaintiff from performing more than two overtime shifts of 4 hours each per week.

### 19.

During the course of Plaintiff's worker's compensation claim, Manu sent a video of Plaintiff injury to the State Accident Insurance Corporation, in violation of DOC policy for the purposes of causing Plaintiff's claim to be disallowed.

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

20.

Because of persistent staffing shortages, DRCI requires its officers to work mandatory overtime when management is unable to fill a work assignment by voluntary means.

21.

To that end, DRCI maintains a mandatory overtime list for each shift of correctional officers. When an employee works 3.5 hours or more of voluntary or mandatory overtime, they reset to the bottom of the list.

22.

It is a regular practice for DRCI officers to volunteer for overtime when they are not low on the list for mandatory overtime so as to fall to the back of the list and have more control over their schedule.

23.

Due to Plaintiff's medical restriction associated with ongoing knee issues, DRCI charged Plaintiff eight hours from his FMLA time bank when DRCI would normally have required him to work mandatory overtime hours.

24.

Beginning in Spring 2021, Plaintiff made multiple complaints to Stepper, human resources, and others via email of DRCI's inaccurate and inappropriate charging of his FMLA time bank, including but not limited to:

- Where DRCI charged Plaintiff FMLA time during a planned vacation;
- Multiple instances where DRCI charged Plaintiff time when Plaintiff was first in line for mandatory overtime and Plaintiff declined due to his injury, and yet no individual was required to work mandatory overtime;
- Where DRCI charged Plaintiff time when he was not mandated to work overtime;
- Instances where, when Plaintiff was second in line for mandatory overtime, Manu and DRCI manipulated the overtime procedure, failing to notify Plaintiff he was first in line

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

for mandatory overtime, after the officer who was first in line for mandatory overtime had either already been mandated to work overtime or had been excused from mandatory overtime; and

- The ongoing situation where DRCI highlighted Plaintiff's name in red on the mandatory overtime spreadsheet adding the notation "notify HR when #1" to Plaintiff's entry and not adding a similar notation to other officer's that had medical overtime restrictions.

25.

On November 10, 2021, Plaintiff learned that Officer Jason Slothower ("Slothower"), a correctional officer usually on a different shift from Plaintiff had hired an AIC for the AIC work crew on Plaintiff's shift. Officer Slothower had hired an AIC who was not next on the waiting list.

26.

On November 10, 2021, Plaintiff sent Officer Slothower the following email: "Slowthower [sic]… I am the AM 5 day on B unit. DON'T HIRE AIC'S FOR MY SHIFT IT ISNT YOUR RESPONSIBILITY! By hir[ing] [AIC's name], YOU have caused unneeded chaos for me as there were other AICS waiting for the job."

27.

Slothower responded to the email by sending Plaintiff the following email: "Talk to me in person. Disrespect me to my face not by email. Don't email again about this."

28.

On November 13, 2021, Plaintiff approached Slothower to resolve the issue, resulting in an argument between Plaintiff and Slothower.

///

///

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

29.

On November 13, 2022, Slothower wrote a memo to a supervisor saying, in part, "Officer Stout disagreed with me and said it was not disrespectful and continued talking to me in my face, disrespectfully, about the orderly problem. I felt Officer Stout was trying to intimidate me by getting in my face. I verbally cut him off and said I would not talk about the orderly situation until he apologized to me. Officer Stout then said that I could shove the apology up my ass. I then told him to shove it up his ass and to stay the fuck away from me."

30.

On February 1, 2022, after continuing issues with FMLA time bank processing, Plaintiff asked Stepper for an Americans with Disabilities Act accommodation for the ongoing issues with his knee.

31.

On February 4, 2022, DRCI Lieutenant Michael Bierman ("Bierman") served Stout a 24-hour Notification of Investigative Interview relating to the following incident "it was reported that you and another staff member engaged in an argument in the presence of another staff and Adult's [sic] in Custody."

32.

Despite the argument having taken place approximately four months prior, this notice did not contain any other information regarding dates, times, or people involved in the incident.

33.

On February 5, 2022, Stepper and Bierman interviewed Plaintiff about this incident ("2022-INV-0016"). DRCI personnel recorded this interview. Since this incident occurred almost three months prior, Plaintiff answered most of Bierman's questions with "I do not recall," or similar responses. Plaintiff later sent DRCI a written statement containing his perspective of the incident, which states, in relevant part:

> In early Nov I sent an email to Slothower, this email was in response
> to Slothower hiring orderlies for job positions on my shift which are

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

my responsibility. Slothower completely disregarded my hiring process and in by doing so caused numerous AIC's on my shift to become enraged. I was left with the chaos and responsibility of explaining why they had been passed over for a job after waiting months. I recall receiving a response email from Slothower. I don't recall opening the email. I recall seeing the email in my in-box and having a label of something stating, "don't disrespect me". I don't recall opening or fully reading the email as I didn't care to exchange emails with Slothower. I don't recall the exact day I had a conversation in hallway in front of A/B control with Slothower. I recall finding Slothower standing by the pop machines on the A/B yard. I recall asking Slothower if we could talk. I recall Slothower saying, "Yes". Slothower and I walked over and stood by the A/B control door. I don't recall seeing any staff or AIC in the area. I recall asking Slothower to tell me about this disrespect, having not read the email fully. I recall Slothower said, "You don't think the email you sent was disrespectful". I recall saying, "It was to the point". I recall Slothower saying, "It was disrespectful". I recall Slothower standing close to me. I recall Slothower stating, "YOU ARE going to apologize to me!" I recall Slothower's tone in his voice had changed and recall his face had become red. I also recall thinking to myself, "This guy is trying to intimidate me". I recall I attempted to ask Slothower, "You don't think hiring an AIC on another shift when it wasn't your responsibility and creating chaos for me to resolve wasn't disrespectful". But I was only able to say, "You don't think waaaa". I recall being cut off by Slothower, who said "Stop talking and apologize!" I recall attempting to talk again, I recall Slothower interrupting me again saying, "Stop talking and apologize". I recall being able to quickly tell Slothower, "You apologize". I recall Slothower's face being very red and him "Yelling", "Fuck you"! I recall telling Slothower, "Take your apology and stick it in your Ass I" I recall Slothower becoming very agitated. I recall Slothower "yelling, Fuck Off!". I recall slothower turning towards the B unit door and as he walked into the unit he yelled, "Get the Fuck away from me!".

34.

Between the November 13, 2022, incident, and the February 5, 2023, notice of investigative interview, DRCI did not issue or otherwise notify Plaintiff of an ongoing investigation.

35.

Later, on February 23, 2022, Plaintiff's shift began as Slothower's shift ended. At around 5:30AM, Plaintiff entered the B unit officer station. Plaintiff observed Officer Slothower, reclining in the station chair, head down, with his back facing Plaintiff.

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

36.

Slothower was asleep on duty or Plaintiff reasonably believed Slothower to be asleep on duty. Plaintiff reasonably believed sleeping on duty to be a violation of a state or federal law, rule, or regulation.

37.

On February 23, 2022, Plaintiff wrote a memorandum and submitted it to his supervisor, Manu, stating that Slothower appeared to be asleep at the end of his sixteen-hour shift:

> On 02/23/2022 I was assigned to B unit. At approximately 5:33am I walked into B unit and observed the Officer slumped over, "Chin touching chest" and slouched down "Body slid down" in the chair asleep. The officers chair was turned to the left and as I approached the desk I could the right side of the officer's face and saw his right eye was closed. I then recognized it was Officer Slothower. When I "DROPPED" my lunch box on the desk he awakened and turned towards me. His eyes were about a 1/3 open and I could see they were very red and blood shot. He had a very exhausted, drained and tired look about him. After tuning towards me .. he stopped and just looked at me appearing to still be asleep. He finally awoke enough to realize who I was and stated, "89 in, 6 cell-ins!". He quickly stood up and walk out of the unit I couldn't ask any questions as he quickly walked away.

38.

On March 12, 2022, DRCI issued Plaintiff a letter of expectation about the November 2022 argument with Slothower.

39.

On March 17, 2022, Plaintiff was notified by DRCI that it had investigated Plaintiff's differential treatment regarding the FMLA time bank and found that Plaintiff had been treated differently than other injured employees.

40.

On March 19 and 20, 2022 DRCI investigated whether Plaintiff disclosed confidential information to AICs in the argument with Slothower.

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

41.

On March 31, 2022, DRCI investigator Frank Serrano ("Serrano") interviewed Plaintiff as a witness regarding his report that Slothower this sleeping. During the interview, Plaintiff repeated the relevant information from his February 23, 2023, memorandum. DRCI personnel recorded this interview.

42.

Oregon Department of Corrections policy 20.1.3 states, "[e]very employee is obligated and shall promptly report to the proper line authority any illegal acts, acts that would pose an immediate threat to the safety, security and welfare of staff and AICs or offenders, violations of post orders, rules, regulations, policies, and procedures. An employee who has knowledge of such conduct by other employees is encouraged to inform those employees committing the act that unless they turn the information in themselves, the employee will report the situation. Employees who possess factual knowledge of behavior that should be communicated to the proper authority and choose not to report it may be subject to disciplinary action."

43.

Under DOC's policy, a corrections officer sleeping while on duty constitutes an act or behavior that should be reported to the proper authority. Failure to report this conduct may result in discipline.

44.

On April 4, 2022, Slothower wrote a memorandum alleging that an AIC approached him with confidential information about the argument with Plaintiff. The memo states that Slothower had asked all the other officers in the unit except Plaintiff about the incident.

///

///

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

45.

On April 15, 2022, Plaintiff reported to Lieutenant William Peterson ("Peterson") during the morning briefing when he was the subject of inappropriate comments regarding his overtime restriction. Plaintiff explained that this was a common occurrence and asked Peterson to investigate. Peterson later stated he had made Plummer aware of the issue.

46.

In mid-April 2022, Plaintiff arrived at work and notified his supervisor, Peterson , that Plaintiff was experiencing a blood-pressure related health crisis and would need to leave work to see a doctor.

47.

Plaintiff stayed at DRCI until his supervisor found another officer to relieve Plaintiff. Plaintiff was relieved from his post and left work for the doctor's office.

48.

When a DRCI officer is sick on the job and unable to perform their duties to the necessary standard, DRCI officers should report this to their supervisor. Once relieved by another officer, the sick officer may leave their post.

49.

On April 18, 2022, Plummer issued Plaintiff a letter of expectation regarding leaving his post without approval.

50.

DRCI never interviewed Plaintiff regarding whether he left his post without approval or whether he was abusing sick leave privileges before issuing a letter of expectation.

///

///

///

///

PAGE 11 – COMPLAINT

51.

On April 19, 2022, Plaintiff learned that Lieutenant Kyle Tallabas ("Tallabas") was investigating Plaintiff regarding Slothower's allegations that Plaintiff had revealed confidential information to AICs. When Plaintiff learned of this investigation, Plaintiff reported to Tallabas that he felt the allegations made by Slothower were retaliatory.

52.

Plaintiff was never formally interviewed, and Tallabas' investigation concluded that the allegations were unfounded.

53.

DRCI never investigated this report of retaliation by Plaintiff.

54.

DRCI never issued Slothower a letter of expectation regarding this report of retaliation.

55.

On May 5 , 2022, DRCI investigator Alex Fox ("Fox") interviewed Plaintiff about Plaintiff's report of Slothower sleeping on duty.

56.

Prior to this interview, Fox had reviewed a video of the incident. The videos that Fox reviewed shows Slothower first reclining in the chair with his head back and facing the ceiling, then with his head down, and then barely moving for approximately thirty minutes prior to Plaintiff entering the room.

57.

During the interview, investigator Fox asked Plaintiff why Plaintiff did not encourage Slothower to self-report the incident. Plaintiff responded that "I'm not going to put myself in that position and then end up in another verbal, you know, argument or whatever with this person [Slothower] and then be into another investigation. So the [sic] I wrote the memo."

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

58.

On May 6, 2023, Fox interviewed Slothower about the sleeping incident over the phone.

59.

The conversation lasted less than eight minutes. Investigator Alex Fox did not ask Slothower about the position Slothower was sitting in or the length of time he sat without moving.

60.

On May 17, 2022, DRCI concluded the investigation into whether Slothower was sleeping on duty. The investigation found that Plaintiff was "untruthful in a memo [Plaintiff] wrote on February 23rd, 2022." DRCI also concluded that "the video evidence suggested [Plaintiff] was dishonest about the allegations in his memo he wrote February 23."

61.

On July 21, 2022, investigator Fox interviewed Plummer saying that at some earlier date, Slothower told her that he perceived Plaintiff's complaint regarding Slothower sleeping on duty as retaliatory for Slothower's part in their November 2021 earlier argument and resulting letters of expectation issued to both Plaintiff and Slothower.

62.

DRCI added this disciplinary action to Plaintiff's personnel file without interviewing Plaintiff.

63.

In mid-August 2022, Plaintiff again reported ongoing discrimination and differential treatment related to his inability to accept mandatory overtime to his supervisors. Specifically, Plaintiff reported comments such as "you're [Plaintiff] a pussy for not working OT" to Peterson that occurred during the daily briefing of officers.

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

64.

At the time, DRCI officers Lori McClain, Tom Coleman, Stephen Morse, Rebecca Nicholson, and Preston Denton all had injury-related overtime restrictions, but DRCI was not deducting FMLA time or listing them in the overtime spreadsheet in the same manner as Plaintiff.

65.

On August 23, 2022, officer Curtis Christiansen ("Christiansen") then told Plaintiff to go to the officer in charge's office indicating that Plaintiff should bring his personal items because he would not be returning to work.

66.

In the office, with union representative officer Kelly Conklin ("Conklin") present, Manu issued Plaintiff a pre-dismissal meeting notice, stating that DRCI would hold a pre-dismissal meeting for Plaintiff to offer any mitigating circumstances on September 6, 2022.

67.

The pre-dismissal letter, dated August 22, 2022, signed by Randall, cites as reasons for Plaintiff's likely dismissal the "inaccurate report about a coworker," (referencing the sleeping investigation) and that Plaintiff's report of this incident "had the effect of creating a retaliatory or chilling effect on that co-worker."

68.

Once Manu explained the letter, Manu asked Plaintiff whether he had any questions. Plaintiff said, "the next day I am to be back here is September 6, 2022, correct?" Manu responded "yes." Plaintiff left the office.

69.

When Plaintiff and Conklin left the officer in charge's office, Plaintiff asked Conklin for their union representative's phone business card. Conklin told Plaintiff he could give Plaintiff the number over the phone.

PAGE 14 – COMPLAINT

70.

In a memo dated August 23, 2022, Sargent Ron Heller ("Heller") wrote the following memo to Manu, "On 8-23-22, I was assigned as the Shift Sgt on Second Shift. Around 1300, I was asked to relieve [Plaintiff] on B Unit. I had C/O Christiansen as the Support so instructed him to take over B Unit for the remainder on the Shift."

71.

DRCI policy does not require a correctional officer to write memoranda when they relieve another Officer from their duties for a meeting.

72.

Manu specifically instructed Heller to write the memorandum.

73.

On August 24, 2023, Manu called Plaintiff, stating that Plaintiff should be at work. Plaintiff replied that he had been told to stay home until September 6, 2022, and that he could be in the following day if necessary.

74.

Manu then wrote a memo stating that "Due to his unexcused absence from work, [Plaintiff] was marked on the roster as No call/No show designation…at no time did I inform him that he was not to return to work until his September 6th meeting."

75.

Similarly, in another memorandum dated August 24, 2022, Officer Christiansen wrote that on August 23, 2022 "I told [Plaintiff] that I was told to take the post for the rest of the day."

76.

Later, on August 24, Plaintiff called Conklin and received the phone number for the union representative.

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

77.

On September 7, 2022, an incident occurred where an AIC refused Plaintiff's instruction to go into his cell. Plaintiff called for assistance, and the response team escorted the AIC into temporary segregation. Another correctional officer, Daniel Lay ("Lay"), was present.

78.

Next, a non-supervisor, Heller, told Plaintiff to write a misconduct report for the incident. Plaintiff responded that he was not comfortable writing the report because DRCI was currently questioning his credibility in several investigations and that there was another officer present who could write the report.

79.

Later, Manu called Plaintiff into his office, and they discussed whether Plaintiff should write a misconduct report for the AIC. Conklin and Peterson were present. After some discussion, Plaintiff agreed to write a report.

80.

Manu later asked Plaintiff to re-write the report. However, Manu had already received a report of the same incident from Lay.

81.

Manu submitted a report stating that Plaintiff had committed misconduct by refusing to write a report.

82.

Peterson also wrote a memorandum about whether Plaintiff 'refused to write a report.' According to Peterson, Manu, and Plaintiff "went back and forth about not playing games, completing an accurate report and not being trustworthy a couple more times and this ended the meeting. At no time did anybody raise their voice or was anything inappropriate said." Conklin also wrote a memorandum about the incident. Conklin, in his memorandum, never says that Plaintiff refused to write the report.

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

83.

On September 9, 2022, DRCI began investigating whether Plaintiff committed any wrongdoing on August 24, 2022, by not showing up for work, and on September 7, related to the report of AIC misconduct.

84.

On October 6, 2022, Beebe completed his investigations into the August 24, 2022, No call/No show incident and the September 7, memo writing incident. investigated Plaintiff for "Failure to report for duty and truthfulness/ completeness in reporting" finding three of the four allegations against Plaintiff were substantiated.

85.

In an investigative report dated October 6, 2022, regarding whether Slothower was sleeping February 2022 , Investigator Fox writes "[a]fter review of the footage, it appears [Plaintiff] could not have seen Mr. Slothower's eye was closed. [Plaintiff] did drop or slam his lunchbox on the desk to wake Mr. Slothower."

86.

On October 6, 2022, DRCI notified Plaintiff that he was to report to duty from home rather than DRCI.

87.

The November 2, 2022, Plaintiff attended a pre-dismissal meeting held by DRCI management.

88.

On November 16, 2022, DRCI suspended the pre-dismissal letter suspended to investigate Plaintiff's mitigation.

///

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

89.

In Late November 2022, Plaintiff received a phone call from Oregon State Police indicating that he was under investigation for illegally recording conversations.

90.

DRCI personnel filed the police report leading to that investigation.

91.

DRCI never notified Plaintiff that he was under criminal investigation.

92.

On December 27, 2022, DRCI issued Plaintiff another pre-dismissal, alleging that Plaintiff violated its electronics policy by recording meetings.

93.

On January 27, 2023, Plaintiff attended another pre-dismissal meeting held by DRCI management.

94.

April 11, 2023, Christina Towers ("Towers"), of the Special Investigations Unit of the Department of Corrections interviewed Plaintiff to "discuss the allegation of [Plaintiff] bringing in an audio recording device to DRCI and audio recording inside DRCI without notification anytime in 2022, and specifically on 8-24-2022 and 10-7-2022."

95.

DRCI terminated Plaintiff's employment on May 10, 2023, citing reasons including: (1) reporting inaccurate information in the sleeping investigation; (2) secretly recording a meeting in August 2022; (3) refusing to write a misconduct report for an AIC; and (4) secretly recording a disciplinary meeting on October 7, 2022.

///

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

FIRST CLAIM FOR RELIEF

Whistleblowing Retaliation, ORS 659A.199

Against DOC, Stepper, Randall, Plummer, and Manu

96.

Plaintiff incorporates the preceding paragraphs of this complaint by reference.

97.

It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions, or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation.

98.

Plaintiff made reports of information to DRCI personnel on multiple occasions that he believed were violations of state or federal laws and/or regulations including:

- Plaintiff's report that Slothower was sleeping on duty, which is specifically referenced in his DRCI's dismissal letter;
- Plaintiff's statements to DRCI that its attempt to discipline him for recording investigative interviews was likely unlawful; and
- Plaintiff's reports of worker's compensation discrimination issues to human resources.

99.

As a result of Plaintiff's reports, DOC, Stepper, Randall, Plummer, and Manu instigated several sham investigations into Plaintiff, peppering his personnel file with misconduct reports, manipulating facts and testimony related to investigations to fit dischargeable offenses, and eventually discharged Plaintiff.

///

///

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

100.

For example, DRCI in its investigations, frequently focused on innocuous information in Plaintiff's statements to find that Plaintiff was untruthful. On one occasion, DRCI personnel focused on whether Plaintiff dropped a lunchbox or a water bottle on the table during the investigation into whether Slothower was sleeping on duty. Then, DRCI used it as a basis to find that Plaintiff was untruthful. In DRCI's termination letter says, as a basis for finding Plaintiff untruthful "the video shows you did not drop a lunch box on the officer's desk." Meanwhile, its own investigations find that Plaintiff "did drop or slam his lunchbox on the desk," but that it also could have been a water bottle. Notably missing from the termination letter is a determination as to whether or not Slothower was actually asleep.

101.

Several charges listed in the earlier pre-dismissal and disciplinary letters do not appear in the final disciplinary letters, evincing an intent by DRCI to "throw everything at the wall and see what sticks" in its intent to justify Plaintiff's termination.

102.

As a result of Defendant's termination of Plaintiff, Plaintiff suffers, and continues to suffer damages to be proven at trial.

103.

Pursuant to ORS 659A.885, Plaintiff is entitled to compensatory damages, emotional distress damages, reasonable attorney fees, and costs incurred herein to be proven at trial.

SECOND CLAIM FOR RELIEF

Public Employee Whistleblowing Retaliation, ORS 659A.203

Against DOC, Stepper, Randall, Plummer, and Manu

104.

Plaintiff incorporates the preceding paragraphs of this complaint by reference, specifically those related to Plaintiff's claim for relief under ORS 659A.199.

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

105.

Plaintiff, on multiple occasions, disclosed information that the Plaintiff reasonably believed was evidence that DRCI violated a federal or state law, regulations, abuse of authority.

106.

As a result of Plaintiff's reports, these Defendants instigated several sham investigations into Plaintiff, manipulated facts and testimony related to those investigations, and eventually discharged Plaintiff.

107.

As a result of Defendant's termination of Plaintiff, Plaintiff suffers, and continues to suffer damages to be proven at trial.

108.

Pursuant to ORS 659A.885, Plaintiff is entitled to compensatory damages, emotional distress damages, reasonable attorney fees, and costs incurred herein to be proven at trial.

THIRD CLAIM FOR RELIEF

ORS 659A.112 Disability Discrimination

Against DOC, Stepper, Manu, Randall, and Plummer

109.

Plaintiff incorporates the preceding paragraphs of this complaint by reference.

110.

ORS § 659A.112(1)(b) makes it "an unlawful employment practice for any employer to…bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability."

///

///

///

///

PAGE 21 – COMPLAINT

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

111.

Since Plaintiff's overtime restriction began due to his knee injury, DRCI and its agents have committed a pattern of employment violations against Plaintiff designed to end his employment, including but not limited, to highlighting Plaintiff's name in the first spot on the 'bucket list' intentionally drawing attention to Plaintiff's inability to work overtime. Other individuals on the bucket list with medical restrictions were not subject to this practice. This was an attempt by DOC, Manu, Randall, and Plummer, to incite hatred of coworkers against Plaintiff, despite Plaintiff's complaints about the practice. Stepper specifically arbitrarily denied Plaintiff's FMLA requests for the purposes of harassing him due to his disability and denying Plaintiff from working overtime that was allowed under Plaintiff's medical restrictions.

112.

When these actions failed to drive Plaintiff into leaving employment at DRCI, these Defendants resorted to sham investigations for the purpose of terminating Plaintiff's employment.

113.

Under ORS § 659A.104, Plaintiff's knee condition qualifies as a disability because it is "a physical . . . impairment that substantially limits one or more major life activities of the individual" including, but not limited to, walking, standing, lifting, bending, and sitting. Plaintiff currently has a 40% disability rating from the Veterans Affairs regarding the injury to his knee.

114.

Plaintiff was qualified to perform his job-essential functions, with or without reasonable accommodation.

///

///

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

115.

Defendants were aware of Plaintiff's disability; Plaintiff asked Stepper for an Americans with Disabilities Act accommodation on February 3, 2022, after becoming frustrated with DRCI repeated reports of Family Medical Leave Act time bank issues in 2021. DRCI itself found in March 2022, investigated Plaintiff's complaints, and found that Plaintiff was being treated differently regarding his ongoing medical restrictions. Additionally, Plaintiff reported derogatory comments made by other officers about his inability to accept mandatory overtime during full-shift briefings.

116.

These Defendants discriminated against Plaintiff terminating Plaintiff for continuing to bring these issues to their attention, because of Plaintiff's mandatory overtime restrictions, and because of Plaintiff's status as a disabled individual. For the reasons stated, Plaintiff's disability was a substantial factor in Defendants' adverse treatment of Plaintiff.

117.

Pursuant to ORS 659A.885, Plaintiff is entitled to compensatory damages, emotional distress damages, punitive damages, reasonable attorney fees, costs incurred herein, and all other monetary relief available, in amounts to be proven at trial.

FOURTH CLAIM FOR RELIEF

Workers' Compensation Retaliation/Discrimination ORS 659A.040

Against DOC, Stepper, Randall, and Manu

118.

Plaintiff incorporates the preceding paragraphs of this complaint by reference.

///

///

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

119.

ORS 659A.040 makes it an unlawful employment practice for an employer to "to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws."

120.

Plaintiff invoked the worker's compensation system regarding his knee injury in 2020.

121.

After the claim, Defendants DOC, Stepper, Randall, and Manu discriminated against Plaintiff in the tenure and conditions of his employment because of his invocation of worker's compensation system, eventually resulting in his termination.

122.

These Defendants discriminated against Plaintiff because of his invocation of the worker's compensation system.

123.

Plaintiff alleges that Plaintiff's usage of the workers compensation system was a substantial or determining factor in DRCI, Defendants Randall, Plummer, Stepper and Manu's, decisions to discipline and eventually terminate Plaintiff.

124.

As a direct, legal, and proximate result of this discrimination, Plaintiff has suffered and will continue to suffer economic damages to be proven at trial. As a result of Defendant's actions, Plaintiff has suffered emotional distress resulting in damages in an amount to be proven at trial. Plaintiff seeks compensatory damages, punitive damages, and all other monetary relief available to remedy discrimination.

///

///

EMPLOYMENT LAW PROFESSIONALS
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

125.

Pursuant to ORS 659A.885, Plaintiff is entitled to compensatory damages, emotional distress damages, reasonable attorney fees, and costs incurred herein to be proven at trial.

FIFTH CLAIM FOR RELIEF

Family Medical Leave Act Discrimination

Against DOC, Manu, Plummer, Stepper, and Randall

126.

Plaintiff incorporates the preceding paragraphs of this complaint by reference.

127.

Under 29 U.S.C. § 2615, it is unlawful for employers to interfere with or discriminate against employees who attempt to exercise FMLA related rights.

128.

As stated herein, Plaintiff applied for and took FMLA leave. Plaintiff subsequently complained about DRCI's manipulation of his FMLA time bank and the misapplication of FMLA leave regarding mandatory overtime. Plaintiff reported this to Manu, Plummer, Stepper, and Randall. Because of Plaintiff's usage of FMLA, these Defendants retaliated and discriminated against Plaintiff.

129.

DOC specifically found that Plaintiff was being treated differently that other injured officers with regard to FMLA. Once this information reached DRCI management retaliation and discrimination began, as described herein.

130.

As such, Plaintiff is entitled to compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the employee was denied or lost and (2) "appropriate" equitable relief, including reinstatement. 29 U.S.C. § 2617(a)(1).

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

SIXTH CLAIM FOR RELIEF

Wrongful Discharge

Against DOC

131.

Plaintiff incorporates the preceding paragraphs of this complaint by reference.

132.

The Oregon Supreme Court has held that "discharge of an at-will employee may be deemed "wrongful" (and, therefore, actionable) . . . when the discharge is for exercising a job-related right that reflects an important public policy." *Babick v. Oregon Arena Corp.*, 333 Or 401, 407, 40 P3d 1059, 1061–62 (2002).

133.

Defendants' decision to terminate Plaintiff was motivated by Plaintiff's insistence in making audio recordings of investigative interviews, for his insistence on having legal and union representation present at disciplinary meetings, and for his opposition to not being informed of the nature of various investigations.

134.

Regarding the audio recording, four of the seven "Facts and Charges" DRCI listed as justification for Plaintiff's termination are related to "inappropriate and possibly unlawful" recording of conversations including disciplinary and investigative interviews.

135.

The so-called "public safety officer bill of rights" creates procedural protections for public safety officers that are under investigation. These protections are important public policies, which the Oregon legislature enacted to protect officers from unfair investigations. This policy is partially embodied in ORS 236.350 to ORS 236.370 and restated nearly verbatim in the Plaintiff's collective bargaining agreement.

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

136.

Defendants did, on many occasions, accuse Plaintiff of lying during investigative interviews. Plaintiff took steps to protect himself and Defendant punished him for taking those steps. Defendant's termination letter of Plaintiff specifically cites him being "defensive."

137.

Procedural protections for public safety officers reflect the gravity of damage that occurs to public safety officers who are found by their employers to be untruthful. Potential law-enforcement employers will not employ public safety officers accused of lying because those employers need to be able to rely on a public safety officer's credibility.

138.

This is exactly what happened to Plaintiff. Defendant's stated reasons for terminating Plaintiff have thus far prevented Plaintiff from obtaining alternative employment in law enforcement.

139.

The investigative report of Plaintiff completed by Oregon Department of Corrections, Office of Inspector General, Special Investigations Unit says  Plaintiff "audio recorded in person meetings at DRCI without prior notification to those present…Although ORS 236.360 grants authority to audio record interviews, it does not speak to how the recording should be done. ORS 165.540 does speak to the requirement for in person notification prior to audio recording."[1]

140.

The Ninth Circuit recently held in *Project Veritas v. Schmidt*, that ORS 165.540(1)(c), the section containing the in-person notification requirement is "invalid on its face." 72 F4th 1043, 1050 (9th Cir. 2023).

---

[1] ORS 165.540(1) provides "a person may not…(c) Obtain or attempt to obtain the whole or any part of a conversation by means of any device, … if not all participants in the conversation are specifically informed that their conversation is being obtained."

PAGE 27 – COMPLAINT

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

141.

As a direct, legal, and proximate result of his termination, Plaintiff is entitled to recover damages in tort including compensatory, emotional distress, and punitive damages in an amount to be proven at trial.

SEVENTH CLAIM FOR RELIEF

Violation of the First Amendment (42 U.S.C. § 1983)

Against DOC

142.

Plaintiff incorporates the preceding paragraphs of this complaint by reference.

143.

Plaintiff's recording of investigative interviews is heavily cited by DOC as a reason for his termination. DOC's investigation of Plaintiff's recording of interviews found that Plaintiff's recording was "inappropriate and possibly unlawful," citing ORS 165.540(1)(c)'s prohibition against in-person recording of conversations without notification.

144.

In their investigation of Plaintiff's recording, DOC cited numerous policies that applied to telecommunications and introduction of contraband to AICs, arguing that Plaintiff impermissibly brought his recorder beyond a control point. However, many DRCI officers regularly wear apple watches and similar devices, more prone to an actual security breach in a prison than a stand-alone voice recorder.

145.

This was pretext. DOC investigated Plaintiff's recording of conversations and terminated his employment for the purpose of impermissibly restricting, chilling, and preventing Plaintiff from speaking-out against DOC's culture of sham investigations, which is a matter of public concern.

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

146.

The Ninth Circuit recently held in *Project Veritas v. Schmidt*, that ORS 165.540(1)(c), the section containing the in-person notification requirement is "invalid on its face" and violates the First Amendment. 72 F4th 1043, 1050 (9th Cir. 2023).

147.

DOC investigated Plaintiff recording and terminated his employment for the purpose of impermissibly restricting, chilling, and preventing Plaintiff from speaking-out against DOC's culture of sham investigations, which is a matter of public concern. In a letter protesting inadequate notification of an investigation, Plaintiff says "DRCM management has a history of giving limited information on their initial notification of Intent to Interview and violating union contract. This is done so an employee has no possible way of knowing the exact reason for being interviewed and then blindsided by questions you can't accurately answer. But the employee is held accountable when you can't answer or leave out imperative details possibly clearing you of any wrongdoing." The purpose of Plaintiff's recording was for the purposes of protecting himself from further sham investigations and to demonstrate that his statements were being manipulated.

148.

DRCI personnel reported Plaintiff to the police for the purpose of chilling his speech.

149.

Defendants' actions, as described herein, violated the Plaintiff's First Amendment rights to free speech under the United States Constitution and 42 U.S.C. § 1983.

150.

Plaintiff seeks compensatory damages in an amount to be determined at trial for loss of wages, benefits, and other financial losses due to the Defendant's violation of the Plaintiff's First Amendment right, in amounts to be proven at trial.

///

///

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

151.

Plaintiff seeks damages for emotional distress, mental anguish, pain and suffering, and harm to his reputation caused by Defendants' actions, in amounts to be proven at trial.

152.

Plaintiff seeks punitive damages against DOC for its willful, wanton, and malicious conduct in violating Plaintiff's First Amendment rights and to deter similar behavior in the future.

153.

Plaintiff seeks reasonable attorneys' fees and costs according to 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Reinstatement of Plaintiff to his employment with DRCI with back pay from the day of termination until the day of reinstatement; or, alternatively;

2. Back and front wages in the amount not less than $332,000 to be proven at trial;

3. Emotional distress damages in the amount of not less than $200,000; and

4. Prevailing party fees, reasonable costs, and attorney's fees.

DATED this 22nd day of August 2023.

Respectfully submitted,

**EMPLOYMENT LAW PROFESSIONALS**

By:    */s Patrick G. Conroy*
Patrick G. Conroy, OSB #223806
Email: patrick@elpnw.com
Jameson E. Gideon, OSB #202871
Email: jameson@elpnw.com
Randy J. Harvey, OSB #116714
Email: randy@elpnw.com
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-1404

PAGE 30 – COMPLAINT

Of Attorneys for Plaintiff Shannon Stout

Trial Attorney:  Randy J. Harvey
randy@elpnw.com

**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404